Froessel, J. (dissenting).
We are here dealing with a case involving the wholly unauthorized exercise of power in an important branch of our State Government.
In 1949 the Legislature created a temporary commission, known as the State Board of Equalization and Assessment, empowered, among other things, to review and revise State equalization rates and to hear and determine appeals and reviews of equalization rates fixed by county boards of supervisors and other local authorities (L. 1949, ch. 346). The commission was to consist of three members appointed by the Governor; respondents were duly appointed to these positions.
In recognition of the State’s “ responsibility ”, the Office for Local Government was created by the Legislature in 1959 to ‘ ‘ help local government in making itself as strong and effective a-s possible ” (L. 1959, ch. 335, eff. April 1,1959; Executive Law, §§ 470, 474).
In 1960, as part of the reorganization of the executive branch of the State Government, the Legislature created a permanent Board of Equalization and Assessment within the Office for Local Government (L. 1960, ch. 335). The new board was to consist of the Commissioner for Local Government and four other members who were to be appointed by the Governor with the advice and consent of the Senate (Real Property Tax Law, § 200). Under this statute and section 39 of the Public Officers Law, the Governor was empowered to make appointments *249 immediately. Although mandated to do so, the Governor has not as yet appointed a Commissioner for Local Government.
Chapter 335 of the Laws of 1960 provided that the newly created permanent hoard was to come into existence on April 1, 1960, when the temporary commission terminated (ch. 335, § 9; Beal Property Tax Law, § 1602, subd. 8). Neither the temporary commission nor its individual members were granted any authority to set new equalization rates after April 1, 1960. Subdivision 8 of section 1602 of the Beal Property Tax Law expressly provides: ‘ ‘ The use of the term 1 state board ’ in this chapter shall in no way extend or be construed to extend the existence of the temporary commission created by [L. 1949, ch. 346] * * V’ (Emphasis supplied.) Thus it is not correct to say that the temporary commission was 11 reconstituted ’ ’; it was abolished as of April 1, 1960 and replaced by the newly created permanent State Board of Equalization and Assessment.
With respect to the individual members of the defunct board, section 5 of the Public Officers Law provides that an officer shall not hold over after the expiration of his term where, as here, “the office shall terminate or be abolished”. The majority attempt to circumvent the prohibition imposed by this statute by resorting to an unwarranted construction of section 11 of chapter 335 of the Laws of 1960. In their opinion, that section provides “ for the transfer of all6 officers and employees ’ of the temporary board to the permanent one — and this presumably includes the transfer of the 3 ‘ members ’ of the former board to the latter ”. Such a construction is manifestly unjustified.
In the first place, section 11 does not purport to transfer anyone from the temporary commission or “ former board ” to the newly created permanent board. It merely provides for the transfer of the 11 officers and employees of the temporary state board of equalization and assessment * * * to the division of equalisation and assessment without further examination or qualification” (emphasis supplied), and such persons “shall retain their respective civil service classification and status”. There is a significant distinction between the permanent State Board of Equalization and Assessment, described in section 200 of the Beal Property Tax Law, and the Division of Equalization and Assessment, described in section 201, to which the officers and employees of the temporary commission were transferred. *250 The division merely carries out the policies and programs of the board (id., § 201, subd. 1; N. Y. Legis. Manual, 1961-62, pp. 460-461). Moreover, it is clear from a reading of section 11 that it is not applicable to the board members who were appointed by the Governor and whose offices were abolished, but relates only to civil service officers and employees subject to examination and qualification, and described in section 201.
Recognizing that there might be a brief interval between the termination of the temporary commission and the appointment of the members of the new board, the Legislature provided for the continuance of ‘ ‘ All orders, rules, regulations and determinations ” of the temporary commission “in force on the effective date of this act ” as orders of the newly created board “ until duly modified or abrogated by such board ” (L. 1960, ch. 335, § 15). Of course, necessarily implicit in the entire scheme, and indispensable to its effectiveness, was the appointment by the Governor of board members within a reasonable time; and there was every indication that he would do so, for, in approving the law establishing the permanent board and terminating the temporary commission, he recognized that the board “ would consist of the Commissioner for Local Government and four other members to be appointed ” by him (N. Y. Legis. Annual, 1960, p. 482; emphasis supplied). It could hardly have been anticipated that no appointment of any kind would be made until January, 1961-—when the three respondents were appointed to the new board — and that to this day neither the Commissioner for Local Government, the only permanent member of the board unequivocally designated by the Legislature, nor the fifth member of the board has been named.
In August, 1960 respondents, as former members of the then defunct temporary commission, and without any legal authority whatsoever, purported to set the final State equalization rate for 1959 for the Town of Smithtown at 9% lower than the last duly established rate of the temporary commission. Petitioner promptly instituted this article 78 proceeding in October, 1960, challenging the legality of respondents’ action and seeking to have the rate annulled and set aside.
Special Term denied petitioner relief, holding that in the “ absence of the appointment of any successors, it would appear that the members of the temporary Board or Commission would *251 serve as [the new] Board until their successors might be appointed Such a result is of course completely contrary to the express statutory provisions terminating the existence of the temporary commission and stating that the use of the term “ state board ” was in no way to “ extend or be construed to extend the existence of the temporary commission
Affirming Special Term, the Appellate Division rejected petitioner’s jurisdictional objection to respondents’ action as “ without substance It held, by reasoning somewhat different from that employed by Special Term, but equally erroneous, that “ it is clear that the Legislature did not intend to deprive the public of the benefits of the statutes relating to the equalization of tax assessments in any interval between the termination of the existence of the temporary commission and the bringing of the membership of the permanent board to its full statutory complement. * * * The members of the permanent board who acted in good faith, under color of right and with the general acquiescence of State and local officials were at least de facto officers and their acts were valid. ’ ’ It would be difficult to make a more patently erroneous statement with respect to the facts of the instant case. Certainly the Legislature did not intend a vacuum upon the termination of the temporary commission; it, therefore, enacted section 15 of chapter 335, which, as noted, provides for the continuance in effect of all orders, rules, regulations and determinations of the temporary commission. The vacuum was created by the failure to appoint.
There is no indication in the statute that the members of the temporary commission could make new determinations after their positions were abolished. Indeed, section 5 of the Public Officers Law expressly provides that they shall not hold over and continue to exercise their former functions. Under what “ color of right ”, then, did respondents act, and how may they be termed de facto officers in view of the applicable statutes to the contrary, and the fact that they had not even been appointed to the new board in August, 1960? There was clearly no acquiescence on the part of petitioner, since this proceeding was instituted about a month after the act complained of.
Subdivision 19 of section 102 of the Real Property Tax Law defines “ State equalization rate ” as “ the percentage of full value at which taxable real property in a county, city, town or *252 village is assessed as determined by the state board ” (emphasis supplied). The term “ state board ” is defined in subdivision 18 of section 102 of the Real Property Tax Law as “ the state board of equalization and assessment ”, the definition having been changed by section 6 of chapter 335 of the Laws of 1960, by elimination of the words ‘1 temporary state commission created by [L. 1949, ch. 346] ”.
Since the three respondents, who had not even been appointed to the new board in August, 1960, certainly did not comprise the “state board of equalization and assessment” — a body consisting of five members including the Commissioner for Local Government — no “state equalization rate”, as that term is defined in the statute, was established as the result of their completely unauthorized act. It necessarily follows that petitioner, who moved promptly, is entitled to have the purported final 1959 equalization rate annulled.
Inasmuch as the statute is crystal clear, we have no right under the guise of strained construction to alter the will of the Legislature or to sanction the executive’s failure to carry out that will, because of in terrorem arguments, with which I do not agree, suggested by the majority. More than a century ago in People v. Cowles (13 N. Y. 350, 359-360), where “ the possible inconveniences ” resulting from our decision were considered, we stated: 1 ‘ The period has been when an inconvenience which would arise from construing a statute as it stood and as it read, was deemed abundantly to warrant a court to put upon it a strained and unnatural construction, for the purpose of avoiding the inconvenience and substantially conforming the will of the law-makers to the better judgment of the judges. But courts at the present day, both in this country and in England, acknowledge that their simple duty is to strive to ascertain the will of the law-makers from the law itself, and having ascertained it, to give it effect ”. In Birnbaum v. New York State Teachers Retirement System (5 N Y 2d 1) we did not hesitate to strike down an attempted breach of the contractual relationship of members of the New York State Teachers Retirement System despite the claim that bankruptcy was ultimately threatened. (See, also, People v. Friedman, 302 N. Y. 75, 79, app. dsmd. 341 U. S. 907.) Neither the courts nor the executive have the right to ignore the will of the people as clearly expressed in the legislative mandates of their duly elected representatives.
*253 Accordingly, the orders of the courts below should be reversed and the determination of respondents annulled and set aside.
Chief Judge Desmond and Judges Dye, Van Voobhis, Bubke and Fosteb concur with Judge Fuld; Judge Fboessel dissents in a separate opinion.
Order affirmed.